IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DERRICK JOHNSON,

        Cross-Claimant,

v.

ORLANDO SMITH,

        Defendant.

1:11-cv-2012-WSD

**OPINION AND ORDER**

This matter is before the Court on Cross-Claimant Derrick Johnson's ("Johnson") Motion to Appoint Counsel [38], Motions to Lift the Stay and Contest Claims of Insurance Proceeds [39, 45], Motion for Service of Motion [40], and Motion to Withdraw Attorney [42].

I.    **BACKGROUND**

In April 2010, State Farm Casualty and Insurance Company ("State Farm") issued a life insurance policy (the "Policy") to Demetra Smith. Defendant Orlando Smith, Demetra Smith's spouse, was listed on the application as the primary beneficiary, and Johnson, Demetra Smith's son, was listed as the successor beneficiary. On May 25, 2010, Orlando Smith allegedly killed Demetra Smith. Although the Policy had not been issued at the time of Ms. Smith's death, State

Farm determined that benefits, in the amount of $250,000, were payable under the terms of the Policy.

On June 9, 2010, Johnson filed a claim for the proceeds payable under the Policy as a result of Demetra Smith's death. On June 14, 2010, State Farm sent a letter to Orlando Smith to ask whether he wished to disclaim his rights to the benefits under the Policy based on Georgia's slayer statute.[1] Orlando Smith refused to disclaim his rights to the life insurance proceeds, and filed his claim for benefits under the Policy.

On August 20, 2010, Orlando Smith was indicted in the Superior Court of Fulton County for the murder of Demetra Smith. In October 2011, Orlando Smith was convicted of the felony murder of Demetra Smith. He was acquitted of first degree murder. Orlando Smith is challenging his convictions, including by moving for a new trial. In late 2010 and early 2011, State Farm informed Orlando Smith and Johnson that it could not determine to whom to pay the life insurance benefits until Orlando Smith's criminal case is finally resolved.

On June 21, 2011, State Farm filed an interpleader complaint against Orlando Smith and Johnson pursuant to Rule 22 of the Federal Rules of Civil

---

[1] Under Georgia law, an insurance beneficiary cannot claim life insurance benefits if the claimant murdered the insured. O.C.G.A. § 33-25-13. See page 7 for the text of the slayer statute.

Procedure and 28 U.S.C. § 1332.  On September 28, 2012, Johnson answered the Complaint, filed a counterclaim against State Farm, and a cross-claim against Orlando Smith, seeking benefits as the successor beneficiary of the Policy.  On October 22, 2012, State Farm filed its Answer to Johnson's counterclaim, and stated that it cannot determine the beneficiary of the life insurance proceeds until Orlando Smith's criminal case is finally resolved.  On October 25, 2012, Orlando Smith informed the Court that his motion for a new trial is pending in state court.

On November 6, 2012, State Farm moved to deposit $263,763.40 into the registry of the Court.  This amount consisted of the face value of the Policy, in the amount of $250,000, and interest, in the amount of $13,763.40, payable under the Policy.  On November 27, 2012, the Court ordered the Clerk of the Court to accept State Farm's check in the amount of $263,763.40.  On February 4, 2013, Orlando Smith informed the Court that his Motion for a New Trial is still pending.

On May 10, 2013, State Farm moved, with Johnson's consent, to discharge itself from any further liability under the insurance policy.  State Farm sought to be dismissed with prejudice from this action, and requested the Court to permanently enjoin Orlando Smith and Johnson from filing any claims against State Farm in any state or federal court regarding the life insurance proceeds.  On January 7, 2014, the Court dismissed and discharged State Farm from this action,

and enjoined Orlando Smith and Johnson from instituting any action against State Farm regarding the life insurance proceeds.

On May 29, 2014, after nearly five months of inactivity in this case, the Court ordered Johnson to show cause why this case should not be dismissed for want of prosecution. On June 13, 2014, Johnson responded to the Court's show cause order, contending that this case cannot proceed until Orlando Smith's appeal of the conviction for felony murder is resolved by the appellate courts in Georgia. On June 23, 2014, Orlando Smith responded to the Court's show cause order, and stated that the Court should "have everything set aside until defendant smith is able to have a fair (appeal) on defendant[s] behalf." Smith's Resp. at 2. The Court construed the parties' response to its May 29, 2014, Order, as a joint request to stay this case until Orlando Smith's direct appeal rights are exhausted.

On September 29, 2014, the Court stayed this matter until Orlando Smith exhausted his right to a direct appeal in the state courts. The Court found that a stay was warranted because the parties agreed that this matter cannot proceed until Orlando Smith exhausted his right to a direct appeal of his criminal conviction. The Court, however, noted that Georgia's slayer statute authorizes it to determine whether Orlando Smith or Johnson is entitled to the life insurance proceeds regardless of the outcome of Orlando Smith's state court appeal, and the parties

could move to lift the stay if they reasonably believe that Smith's case in the state courts is not progressing in a timely manner.

On November 17, 2014, Johnson filed a *pro se* motion to lift the stay on the ground that Orlando Smith's case in the state courts is not progressing in a timely manner.  On December 31, 2014, Orlando Smith filed a Notice of Filing, attaching a letter from his attorney indicating that his Amended Motion for New Trial remains pending in the Fulton County Superior Court.  On January 23, 2015, Aaron M. Clark filed a Notice of Appearance as counsel on behalf of Johnson.  On February 13, 2015, Johnson filed a renewed Motion to Lift the Stay.  Johnson argues that Orlando Smith's case in the state courts is not progressing sufficiently noting that the Motion for New Trial has been pending for over three (3) years. Johnson requests the Court to lift the stay, and states that he is ready to proceed to trial.

II.  **DISCUSSION**

   A.  <u>Stay</u>

A district court has the inherent power to control its docket and manage cases before it.  <u>Ortega Trujilo v. Conover & Co. Comm., Inc.</u>, 221 F.3d 1262, 1264 (11th Cir. 2000).  As an incident to this inherent power, the Court has broad discretion to stay proceedings.  <u>Id.</u> (quoting <u>Clinton v. Jones</u>, 520 U.S. 681, 705

(1997)). "When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay." Id. at 1264. The scope of a stay, including its duration, and the reasons for the stay are factors to be considered in determining whether a case should be stayed pending resolution of a related proceeding. Id. A stay is deemed to be immoderate if the proceedings in another forum are not progressing quickly. Ortega, 221 F.3d at 1264-65; see also CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1289 (11th Cir. 1982)

Orlando Smith states that he still is waiting for a decision on his Motion for a New Trial. The Motion has been pending in the state court for over three (3) years. The Court concludes that a stay is no longer warranted in this matter because Orlando Smith's case is not progressing quickly in the state courts. See American Manuf. Mut. Ins. V. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1524 (11th Cir. 1984) (finding stay of federal proceedings pending the outcome of state court proceedings to be indefinite where state court proceedings had been pending for 18 months and no trial date had been set in state court). Orlando Smith does not state that a decision on his Motion for New Trial is imminent, and the parties and the Court do not know when Orlando Smith's state court case and

6

appeal will conclude. Based on these facts, the Court determines that the continuance of a stay in this matter for an indefinite period of time is immoderate. Ortega, 221 F.3d at 1264-65; CTI-Container Leasing Corp., 685 F.2d at 1289. Johnson's Motions to Lift the Stay are granted.

    B.    Slayer Statute

O.C.G.A. § 33-25-13, known as the "slayer statute," provides that

> No person who commits murder or voluntary manslaughter or who conspired with another to commit murder shall receive any benefits from any insurance policy on the life of the deceased, even though the person so killing or conspiring be named beneficiary in the insurance policy. A plea of guilty or a judicial finding of guilt not reversed or otherwise set aside as to any of such crimes shall be prima-facie evidence of guilt in determining rights under this Code Section.

O.C.G.A. § 33-25-13. Secondary beneficiaries are entitled to the benefits under a life insurance policy if the primary beneficiary is convicted of murder, and the conviction is affirmed on appeal. Id. Under the slayer statute, the murder or voluntary manslaughter of the insured "may serve as prima facie evidence of guilt in a civil proceeding . . . upon either the exhaustion of the individual's right to a direct appeal or the expiration of time within which a first direct appeal could have been timely filed." Slakman v. Continental Casualty Co., 587 S.E.2d 24, 27 (Ga. 2003). The phrase "not reversed or otherwise set aside" does not encompass the right to exhaust all remedies, including a collateral challenge to the conviction

7

because habeas corpus proceedings are "intended to provide an avenue for upsetting judgments that have otherwise become final." Id. at 26 (citing Gibson v. Turpin, 413 S.E.2d 186 (Ga. 1999)).

"An individual [,however,] may be barred [from receiving benefits under a Policy] even in the absence of a criminal conviction if it is determined under the appropriate standard of proof that the individual committed murder or voluntary manslaughter or conspired to commit murder." Slakman, 587 S.E.2d at 26. Georgia's slayer statute authorizes the Court to determine whether Orlando Smith or Johnson is entitled to the life insurance proceeds regardless of the outcome of Orlando Smith's Motion for a New Trial and appeal to the state courts. See Cantera v. American Heritage Life Ins. Co., 617 S.E.2d 259, 262 (Ga. Ct. App. 2005); Neal v. Neal, 287 S.E.2d 109, 110 (Ga. Ct. App. 1982). Because Orlando Smith has not exhausted his right to appeal in the state courts, evidence of his conviction does not constitute "prima facie" evidence of his guilt in determining the parties' rights under O.C.G.A. § 33-25-13. Slakman, 587 S.E.2d at 27. The appropriate standard of proof to determine whether Orlando Smith murdered his wife, and is thus barred from receiving benefits under the Policy, is a preponderance of the evidence. See Continental Casualty Co. v. Adamo, 286 F. App'x 625, 627 (11th Cir. 2008). The Court concludes that it may determine the

proper beneficiary of the Policy under the slayer statute even if Orlando Smith has not exhausted his state court appeals.

    C.    Writ of Habeas Corpus Ad Testificandum

Prisoners have a right of access to the courts, but that right does not necessarily include the right to be physically present at trial in a civil case. See Bounds v. Smith, 430 U.S. 817 (1977); Pollard v. White, 738 F.2d 1124, 1125 (11th Cir. 1984). The Court, in its discretion, may require the presence at trial of a prisoner incarcerated in a state penitentiary. United States v. Sandoval, 299 F. App'x 863, 864-65 (11th Cir. 2008). Section 2241(c)(5) of the Judicial Code authorizes the Court to issue writs of habeas corpus ad testificandum ("writ") to obtain the presence of a state prisoner at trial. 28 U.S.C. § 2241(c)(5). The writ can be used to order a state prisoner's presence from anywhere in the country. See Carbo v. United States, 364 U.S. 611, 619 (1961). The Court's authority to issue the writ applies in all civil cases between private parties. See ITEL Capital Corp. v. Dennis Mining Supply & Equipment, Inc., 651 F.2d 405, 406-07 (5th Cir. 1981)[2]; Barnes v. Black, 544 F.3d 807, 809-10 (7th Cir. 2008) (holding that "the federal courts have an interest in being able to get hold of prisoners to

---

[2] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before September 30, 1981.

9

testify in cases before those courts that transcends the categories of prisoner and criminal cases.").

In determining whether the writ should be issued, the Court considers "whether the prisoner's presence will substantially further the resolution of the case, what security risks are presented by permitting the prisoner to come to court to testify, what the expense of the prisoner's transportation and upkeep will be, and other facts bearing on the need for the prisoner's testimony vis-à-vis the difficulties attendant in securing it."  United States v. Rinchack, 820 F.2d 1557, 1568 (1987).

The Court concludes that Johnson's presence is not required at trial because counsel represents him, and his presence will not substantially affect the outcome of this case.  Johnson is not required to testify in this matter because he does not have personal knowledge of the circumstances surrounding Demetra Smith's murder.  The Court also expects that Johnson's counsel will meaningfully represent Johnson's interests at trial.  The Court, therefore, declines to issue a writ to secure Johnson's presence at trial.  See Pollard, 738 F.2d at 1125 (affirming the district court's decision to deny a petition for a writ because, among other things, the prisoner was represented by competent counsel).

Orlando Smith's circumstances may be different.  He is not represented by counsel, and the Court anticipates that his testimony may be material to

determining the proper beneficiary to the life insurance proceeds under the slayer statute.  To adequately determine whether a writ should be issued to secure Orlando Smith's presence, the Court will allow Orlando Smith, or his counsel, if any, to file a petition seeking the writ that explains why his presence will substantially further the resolution of this case.  Orlando Smith's filing should include evidence of his disciplinary history, if any, at the Hays State Prison in Trion, Georgia.  The Court will not consider whether a writ should be issued to secure Orlando Smith's presence if the petition for the writ is not filed on or before May 15, 2015, or if the petition does not include the required information about Orlando Smith's disciplinary history at the Hays State Prison.  See Rinchack, 820 F.2d at 1568 (noting that a district court may refuse to issue a writ on the ground that the petition to seek the writ is untimely).

### III.  CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Johnson's Motions to Lift the Stay and Contest Claims of Insurance Proceeds [39, 45] are **GRANTED**.

**IT IS FURTHER ORDERED** that Johnson's Motion to Appoint Counsel [38] and Withdraw Attorney [42] are **DENIED AS MOOT** because he is now represented by counsel.

**IT IS FURTHER ORDERED** that Johnson's Motion for Service of Motion on Orlando Smith is **DENIED AS MOOT** because Orlando Smith is in receipt of Johnson's filings [40].

**IT IS FURTHER ORDERED** that Orlando Smith or his attorney, if any, shall file a Petition for Writ of Habeas Corpus Ad Testificandum on or before May 15, 2015.  The Petition must include evidence of Orlando Smith's disciplinary history at the Hays State Prison in Trion, Georgia.

**SO ORDERED** this 14th day of April, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE